[Cite as *State v. Dickson*, 2023-Ohio-228.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111527 |
| v. | : | |
| DOMINIC C. DICKSON, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 26, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-613211-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ayoub Dakdouk, Assistant Prosecuting Attorney, *for appellee.*

Michael Gordillo, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Dominic C. Dickson ("Dickson"), appeals from his convictions and sentence. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On February 13, 2017, in Cuyahoga C.P. No. CR-17-613211-A, a Cuyahoga County Grand Jury indicted Dickson on seven counts: aggravated burglary in violation of R.C. 2911.11(A)(1); attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2); kidnapping in violation of R.C. 2905.01(A)(2); robbery in violation of R.C. 2911.02(A)(2); robbery in violation of R.C. 2911.02(A)(3); theft in violation of R.C. 2913.02(A)(1); and domestic violence in violation of R.C. 2919.25(A). The charges arose from an incident that occurred on June 8, 2016.

{¶ 3} On February 28, 2017, the court issued a capias on Dickson. The court did not gain custody over Dickson until several years later, on November 12, 2021. On November 16, 2021, Dickson pleaded not guilty to the indictment.

{¶ 4} On March 14, 2022, Dickson waived his right to a jury trial, and the trial court conducted a bench trial. The court ruled on plaintiff-appellee, the state of Ohio's pretrial requests including (1) granting an amendment to the indictment to incorporate the victim's name; (2) granting a motion for separation of witnesses; (3) accepting that the robbery charges were nolled; (4) placing the plea offer on the record for appeal purposes, and (5) ruling that no alibi evidence would be admitted.

{¶ 5} At trial, the following witnesses testified: the victim, D.F., Patrol Officer Matthew Cavanaugh ("Officer Cavanaugh"), and Sergeant Brian Williams ("Sergeant Williams"). D.F. testified that she receives social security income because she was classified as a slow learner with an independent educational plan and suffered from heart problems and now has asthma. Initially, D.F. did not recall

where she lived on June 8, 2016, but subsequently recognized a picture of the apartment where she lived at that time. D.F. testified that she lived alone in 2016 but her cousin Mariah Montanez ("Mariah") and Mariah's boyfriend, Tim McMillion ("Tim"), stayed with her a few nights, including on June 8, 2016.

{¶ 6} D.F. described the events that occurred on June 8, 2016. Initially, D.F. testified that Dickson texted her and told her he was coming to her apartment. D.F. stated that she let Dickson into her apartment and, because Mariah and Tim were sleeping on the couch, D.F. led Dickson to her bedroom where D.F.'s baby slept in his crib. D.F. testified that she could tell by the way he walked that Dickson was drunk. D.F. testified that Dickson attempted to wake the baby with his cell phone's flashlight. When D.F. told Dickson not to wake the baby, he turned off the flashlight and the room became dark. D.F. sat on the bed, Dickson pulled down his pants, and Dickson told D.F. to perform oral sex. D.F. responded "no, I don't do that." D.F. testified that Dickson grabbed her hair, then her neck, and pushed her head towards his genitals. D.F. testified that she told Dickson to let go because he was hurting her and she cried a bit. D.F. stated she did not see Dickson's penis — because it was too dark — and his penis did not come into contact with her face or body; she assumed his genitals were exposed since he told her to perform oral sex. D.F. could not remember the details of what happened next but stated, "I guess he got mad and put his pants up."

{¶ 7} D.F. testified that she and Dickson were in the bedroom for five to ten minutes. D.F. testified that she exited the bedroom door, placed her cell phone on

the kitchen counter, and returned to the bedroom to check on her sleeping baby. When D.F. returned to the kitchen, her phone was gone and Dickson was heading outside. D.F. stated that she asked Dickson for her phone, and he denied taking it. D.F. testified that she then began to cry and woke Mariah and Tim. Even with the help of Mariah and Tim, D.F. was unable to locate her phone. D.F. never saw Dickson take her phone, but assumed he took it since she was unable to find it.

{¶ 8} Dickson returned to the apartment that same day to retrieve his hat. D.F. testified that she told Dickson he could get his hat when he returned her phone.

{¶ 9} D.F. testified that her neck was red but there were no marks from the encounter, she never sought medical treatment, and there was no evidence of any injury to her. D.F. testified that she and Dickson previously had a sexual relationship but she did not intend to have sexual relations with Dickson on June 8, 2016. Dickson is the father of D.F.'s son although she was unaware of her child's paternity at the time of the June 8, 2016 incident.

{¶ 10} D.F. then changed her narrative and testified that Dickson pulled her hair for three minutes and he choked her for 30 to 40 minutes. D.F. testified that she felt like she could have left when Dickson was choking her and pulling her hair and she then stated that she did not remember whether she felt at liberty to leave the bedroom. Under cross-examination, D.F. testified that Dickson had his hands on her throat on two different occasions on the date in question — once for three minutes and once for 10 to 20 minutes. D.F. also provided conflicting testimony as

to whether Dickson laid down in her bed that morning and slept for an hour; she ultimately stated Dickson slept in her bed before leaving the apartment.

{¶ 11} D.F. testified that she did not call the police immediately because there was an outstanding arrest warrant for Tim, and Tim asked her to wait to call until after he left the apartment. Defense counsel played the audiotape from D.F.'s 911 call in which D.F. informed the police that Dickson choked her and she thought he would return to her apartment.

{¶ 12} Officer Cavanaugh testified that at approximately 4:00 p.m. on June 8, 2016, he responded to D.F.'s sexual assault complaint registered with the Cleveland Police Department. Upon arriving at D.F.'s home, Officer Cavanaugh interviewed D.F. According to Officer Cavanaugh's testimony, D.F. told Officer Cavanaugh that at 2:00 a.m. Dickson pushed his way into her apartment and attempted to force D.F. to perform oral sex on him. Officer Cavanaugh testified that D.F. did not report any penetration occurred during the alleged assault. Officer Cavanaugh testified that he did not recall whether he observed any physical damage to the victim's apartment or physical injury to her but he would have included such details in his report. Officer Cavanaugh reviewed his incident report during his trial testimony and offered no testimony that it indicated damage to the premises or injury to the victim. Officer Cavanaugh testified that D.F. told him she and Dickson were not involved in a relationship and did not have any children together. Officer Cavanaugh testified that he interviewed Mariah but not Tim. Officer Cavanaugh testified that he toured the neighborhood on the date of the incident, but was unable

to apprehend Dickson. Officer Cavanaugh testified he was unaware of any allegation that Dickson attempted to wake D.F.'s baby, and he did not review Detective Moctezuma's report that was prepared after Officer Cavanaugh's interviews of D.F. and Mariah.

{¶ 13} Sergeant Williams testified that he was an employee of the Investigation Unit with the Cuyahoga County Sheriff's Department and his responsibilities included monitoring the jail phone call system. While Sergeant Williams's testimony is not relevant on appeal, counsel's discussion about the admissibility of the jail house phone calls led to a pertinent discussion. Defense counsel objected to any testimony regarding jail house phone calls since the information was provided the day prior to trial. However, defense counsel stated he would retract his objection and stipulate to the authenticity and admissibility of the jail house calls if the state stipulated to the admission of Detective Moctezuma's report. The state objected to Detective Moctezuma's report on the basis of hearsay. The court held its ruling on the admissibility of Detective Moctezuma's report in abeyance until D.F. took the stand; the court opined that the hearsay objections would be rectified once D.F. testified.[1]

{¶ 14} Following the state's case-in-chief, Dickson made an oral Crim.R. 29 motion. The court granted the motion on the kidnapping charges. In lieu of the

---

[1] The trial court did not specify the basis for it's comment that D.F.'s testimony would resolve all of the state's hearsay objections.

defense calling its subpoenaed witness, Detective Moctezuma, the parties stipulated to the admittance and authenticity of the detective's December 27, 2016 report.

{¶ 15} Detective Moctezuma's report stated that he interviewed D.F. on July 13, 2016. In the interview, D.F. stated that Dickson came to her home at approximately 2:00 a.m. in an intoxicated state. D.F. let Dickson into her apartment. Per the report, D.F. detailed the loss of her cell phone prior to mentioning the alleged assault. D.F. then stated Dickson pulled her hair, placed both hands on her neck, and squeezed her throat for 10 to 20 minutes. D.F. told Detective Moctezuma that Dickson also exposed himself and wanted oral sex, which D.F. refused. D.F. stated Mariah and Tim were asleep on the couch when Dickson entered the apartment. D.F. thought Tim was awake but Mariah slept through the incident.

{¶ 16} Detective Moctezuma's report appears to include the detective's notes or conclusions following the interview that state (1) D.F. waited until the day after the incident to file a police report; (2) D.F. did not describe Dickson as using physical force to attempt oral sex; Dickson only verbally stated he wanted sex and oral sex. D.F. described the mood as quiet and stated no yelling or sexual conduct occurred between D.F. and Dickson; (3) D.F. appeared more concerned about her missing cell phone, and D.F. confirmed she did not see Dickson take the phone; (4) Detective Moctezuma showed D.F. the incident report completed by Officer Cavanaugh following her June 8, 2016 interview, and D.F. agreed with that description of the events rather than the inconsistent statements she made to Detective Moctezuma;

and (5) based upon the July 2016 statement, there was no evidence to support the charges of aggravated burglary, rape, kidnapping, or theft.

{¶ 17} Detective Moctezuma's report also indicated that on August 1, 2016, D.F. informed the detective that she was not speaking with Mariah. The report states Detective Moctezuma conducted phone interviews of Mariah and Tim on August 2, 2016. According to Mariah's interview, D.F. invited Dickson to her apartment. Upon Dickson's arrival, Mariah let him into the apartment and D.F. and Dickson then went into D.F.'s bedroom. Mariah and Tim were sleeping on the living room couch. Mariah believed Dickson was intoxicated. Mariah did not hear any yelling or disturbance emanating from the bedroom. Mariah stated Dickson left the house around 5:00 a.m. D.F. later woke up and cried that Dickson took her cell phone. Mariah "believe[d] that [D.F.] [wa]s lying because she [wa]s mad that Dickson stole the cell phone." Mariah confirmed that she and D.F. were not on speaking terms.

{¶ 18} Detective Moctezuma's report also stated that Tim denied being present on the date of the incident. Tim stated Mariah was a liar and he heard about the incident from her. On August 4, 2016, Detective Moctezuma's report noted that he received and reviewed the 911 audiotape; D.F. mentioned during the call that Dickson pulled her hair and choked her but did not mention forced entry or sexual assault. The last entry on Detective Moctezuma's report is dated December 27, 2016, and states that Mariah was a victim of rape, and she named Tim as the suspect.

{¶ 19} The defense did not call any witnesses but introduced Detective Moctezuma's report as an exhibit. The trial court found Dickson not guilty of aggravated burglary or aggravated theft and guilty of attempted rape, a felony of the second degree, and domestic violence, a misdemeanor of the first degree. On April 12, 2022, the trial court held a sentencing hearing. On the attempted rape charge, the court ordered Dickson to serve six years. The court sentenced Dickson to time served on the domestic violence charge. The court explained the obligations associated with Dickson's classification as a Tier III sex offender registrant and imposed postrelease control.

{¶ 20} On May 11, 2022, Dickson filed an appeal presenting these assignments of error for our review:

> First Assignment of Error: The trial committed reversible error and prejudiced Appellant's Due Process rights by failing to enforce Appellant's subpoena.

> Second Assignment of Error: This matter should be reversed and remanded for a new trial because Appellant received ineffective assistance of counsel at trial.

**Legal Analysis**

**A. Enforcement of Subpoena**

{¶ 21} In his first assignment of error, Dickson argues that the trial testimony of Detective Moctezuma was essential to his defense. Specifically, Dickson argues that Detective Moctezuma would have testified that the victim, D.F., exaggerated her allegations of sexual misconduct because she believed Dickson stole her cell phone. Dickson argues that the trial court erred and violated his due process

rights when it failed to enforce the subpoena and ensure Detective Moctezuma testified at trial. The state contends that Dickson was not deprived his due process rights where the subpoena was issued and Dickson subsequently relinquished his right to call the witness when both parties stipulated to the introduction of Detective Moctezuma's written report in lieu of live testimony.

{¶ 22} "Few rights are more fundamental than the right of an accused to present witnesses on his behalf." *State v. Brown*, 64 Ohio St.3d 649, 652, 597 N.E.2d 510 (1992), citing *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798, 810 (1988). The right to present witnesses is grounded in the Sixth Amendment of the U.S. Constitution. *Taylor* at 409. The right to present witnesses and compel their attendance at trial also stems from Section 10, Article I of the Ohio Constitution. *State v. Jackson*, 8th Dist. Cuyahoga No. 105919, 2018-Ohio-1633, ¶ 17, citing *State v. McIntosh*, 1st Dist. Hamilton No. C-020593, 2003-Ohio-3824, ¶ 17, citing *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

{¶ 23} At the start of Dickson's case-in-chief, defense counsel informed the court that a subpoena had been issued for Detective Moctezuma. In lieu of Detective Moctezuma's personal appearance at trial, the parties stipulated to the "authenticity and admittance" of the detective's report. The trial court made no ruling to exclude Moctezuma's live trial testimony, but accepted his report as proffered by defense counsel: "[The report] is admitted because you agreed to admit it." Dickson voluntarily agreed to forego enforcement of the subpoena and Detective

Moctezuma's live trial testimony. Dickson cannot now argue that the trial court failed to enforce the subpoena when it was defense counsel's own actions that resulted in abandoning the subpoena. Thus, Dickson's contention that the trial court erred when it did not enforce the subpoena is without merit, and his first assignment of error is overruled.

## B. Ineffective Assistance of Counsel

{¶ 24} In his second assignment of error, Dickson argues that defense counsel's actions amounted to ineffective assistance of counsel when he (1) relied on Detective Moctezuma's report that contained hearsay statements rather than calling the witness for live trial testimony and (2) failed to subpoena Mariah and Tim to testify at trial.

{¶ 25} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong of the *Strickland* test requires a defendant to establish deficient performance by showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland* at 688. The second prong requires the defendant to demonstrate that the deficient performance prejudiced his defense. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶ 26} "[T]he reviewing court should not consider what, in hindsight, may have been a more appropriate course of action" by trial counsel. *State v. Linder*, 8th Dist. Cuyahoga No. 106600, 2018-Ohio-3951, ¶ 37. Instead, a reviewing court "must be highly deferential." *Strickland* at 689. According to the *Strickland* Court, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 27} "While '[t]he right to counsel is the right to the effective assistance of counsel,' 'trial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel.'" *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 19, quoting *Strickland* at 686, citing *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Counsel's decision as to which witnesses will be called at trial is considered trial strategy """and will not be second-guessed by a reviewing court.""" *Fisher* at ¶ 20, quoting *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 203, quoting *State v. Treesh*, 90 Ohio St.3d 460, 739 N.E.2d 749 (2001). "[T]he mere failure to call witnesses does not render counsel's assistance ineffective absent a showing of prejudice." *State v. White*, 8th Dist. Cuyahoga No. 101576, 2017-Ohio-7169, ¶ 14.

{¶ 28} Dickson contends that defense counsel exhibited ineffective assistance of counsel when it relied on Detective Moctezuma's report that was likely

to be discounted by the court as hearsay rather than having the detective testify in person. Defense counsel subpoenaed Detective Moctezuma to testify at trial. In lieu of Detective Moctezuma's trial testimony, the parties stipulated to the authenticity and admissibility of his report, and the trial court accepted the report. While the trial court stated it would hold its ruling on the admissibility of Detective Moctezuma's report in abeyance until after the victim's testimony — specifically referencing hearsay objections — the trial court subsequently accepted the report without any noted limitations. Absent the trial court's rejection of the stipulated report or a verbal warning at the time the stipulated document was introduced that the court would potentially limit the introduction of the report, defense counsel had no reason to believe the court would not consider the entire report. *See State v. Jewell*, 4th Dist. Meigs Nos. 94 CA 04 and 94 CA 05, 1995 Ohio App. LEXIS 288, 9 (Jan. 24, 1995) ("When a court refuses to accept a stipulation, however, the parties must be given the opportunity to offer proof of the matter."). Defense counsel's decision to introduce the Detective Moctezuma's report rather than provide his live testimony was a strategic decision that this court is not permitted to second-guess.

{¶ 29} Defense counsel also failed to subpoena Mariah. Dickson now contends that Mariah would have testified that D.F. invited Dickson to her apartment and let him in to her home. Further, Dickson contends that Mariah would have testified that D.F. was more concerned about her missing cell phone and "was exaggerating her story because she was upset about the phone." Dickson contends that with the presentment of Mariah's statements, the trial court would

have doubted the veracity of D.F.'s testimony that the court relied upon when it found Dickson guilty of attempted rape and domestic violence.

{¶ 30} Officer Cavanaugh testified that he interviewed Mariah. Officer Cavanaugh was not asked about nor did he offer any testimony that Mariah discredited D.F.'s version of events. The record does not reveal and we do not know if defense counsel interacted with Mariah prior to trial or if Mariah maintained the same position at trial — almost five years after her interview with Detective Moctezuma. It is plausible that defense counsel spoke with Mariah and determined her testimony would no longer be helpful to the defense. Additionally, the trial court stated, when it rendered its judgment on the case, that D.F.'s testimony about the length of time she was assaulted was the only portion of her testimony that was inconsistent and not credible. The court found D.F.'s testimony about "the actions of [Dickson] in choking her, and pulling her hair, and forcing her head down towards his genital area in order to have her give him fellatio was very credible." The trial court read Detective Moctezuma's report but did not rely on the report because it found the document full of hearsay and "not terribly relevant to the decision of the credibility of the complaining witness." The trial court's comments indicate that it did not find the report, which included Mariah's comments, persuasive in discrediting D.F.'s testimony. Thus, we cannot say it was reasonably probable that the trial results would have been different if defense counsel subpoenaed Mariah to testify at trial.

{¶ 31} Defense counsel did not subpoena Tim. Dickson argues Tim would have testified that he was not present at D.F.'s home on June 8, 2016. And if Tim was not present, D.F. was not truthful when she told the police that she waited 12 hours to call 911 until after Tim, who supposedly had an outstanding arrest warrant, had left her home. Dickson further argues that Tim's testimony would have included statements that D.F. was more concerned about her cell phone than the alleged assault. Nothing in the record demonstrates Tim provided a statement that D.F. was more concerned about her cell phone. Tim's testimony that he was not present at D.F.'s apartment could have raised a question as to D.F.'s truthfulness but it also would have negatively impacted Mariah's credibility. If Mariah was not a credible witness, there would be no merit to Mariah's statements that D.F. lied about the attempted rape and domestic violence allegations because she was angry Dickson stole her phone. Based upon these limited facts regarding Tim and his potential testimony at trial, the record shows the failure to subpoena Tim amounted to trial strategy and did not prejudice the outcome of the trial.

{¶ 32} Thus, the record does not demonstrate that Dickson was provided ineffective assistance of counsel, and we overrule Dickson's second assignment of error.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY EILEEN KILBANE, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN T. GALLAGHER, J., CONCUR